[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11221
Non-Argument Calendar
_____

D.C. Docket Nos. 8:11-cv-02223-JSM ; 8:90-bk-10016-PMG


In Re: The Celotex Corporation,
In Re: Carey Canada, Inc.,

                                                                   Debtors.

_____

THE PROPERTY DAMAGE ADVISORY COMMITTEE,

                                                      Plaintiff - Appellant,

versus

THE CELOTEX ASBESTOS SETTLEMENT TRUST,

                                                      Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 16, 2012)

Before MARTIN, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

The Property Damage Advisory Committee appeals from the bankruptcy court's denial of its motion to compel payment of counsel fees from the Asbestos Settlement Trust.

I.

This appeal arises out of long-standing personal injury and property damage claims relating to the manufacture and use of building materials containing asbestos. The Asbestos Settlement Trust (the Trust) was formed after Celotex Corporation and Carey Canada Inc.—respectively, a manufacturer and distributor of asbestos—filed for Chapter 11 bankruptcy protection in 1990 after being named as defendants in thousands of asbestos-related lawsuits. See In re Celotex Corp., 487 F.3d 1320, 1324 (11th Cir. 2007). The Trust was established to manage the approval, disallowance, and payment of property damage and personal injury claims against Celotex and Carey Canada. See id. at 1325. This is not the first

2

time that this Court has been asked to resolve disputes between the Trust and its beneficiaries.  See generally id.

This particular appeal requires us to answer when counsel for the Property Damage Advisory Committee is entitled to recover fees for services under the Trust Agreement.  The Second Amended and Restated Asbestos Settlement Trust Agreement creates a number of bodies to facilitate the processing and administration of property damage claims.  Of particular relevance to this appeal, the Trust Agreement establishes the Property Damage Advisory Committee (the Committee) to aid in the resolution of property damage claims against the Trust. See Trust art. 8.1.  The Committee exists under the Trust Agreement "until the date the Trust pays the last Allowed PD [Property Damage] Claim and all disallowed PD Claims have been disallowed by final, non-appealable order."  Id. The Agreement assigns the Committee various duties.  Among those responsibilities is the duty to consult with the Trustees concerning the "implementation and administration of [the Claims Resolution Procedures]," id. at art. 3.2(e)(ii); see also id. at art. 8.1, and the duty to "serve in a fiduciary capacity representing all holders of PD Claims," id. at art. 8.1.  The Committee also reviews financial statements and annual reports issued by the Trust.  See id. at art. 3.2(c)(i)–(ii).

In addition to the duties assigned in the Trust Agreement, the Committee has specific responsibilities in the Third Amended and Restated Asbestos Property Damage Claims Resolution Procedures (APDCRP). This document obligates the Property Damage Claims Administrator to "participate and consult with the [Committee] on all major policy and administrative decisions affecting . . . implementation of[] the APDCRP." APDCRP § II. The Administrator must also obtain the Committee's consent when affecting any "material changes . . . in these APDCRP for processing Asbestos Property Damage Claims, but not related to specific amounts to be paid or percentages to be paid." Id.

In connection with these duties, the Trust Agreement requires the Trust to reimburse all reasonable expenses incurred by the Committee "in connection with the performance of [its] duties hereunder, including costs and fees of professionals and experts." Trust art. 8.6(c).

II.

In October 2006, the Property Damage Claims Administrator informed the bankruptcy court that all property damage claims had been processed, although some issues remained as to the payment of some approved claims. In February 2009, after three years of adjudicating those payment issues, the bankruptcy court established a cut-off date of August 12, 2009 for "any and all claims arising from

4

or relating to [property damage claims] that were allowed by the Property Damage Claims Administrator but not promptly paid by the trust."

Even after the cut-off date passed, a number of property damage claims remained outstanding against the Trustees, including claims for breach of express and implied contract; breach of trust; and breach of fiduciary duty. The claims largely arose out of delayed payment of property damage claims that had been allowed by the Claims Administrator and the allegedly unequal treatment of property damage claimants as compared to personal injury claimants. Also after the cut-off date, the Trust filed an annual report explaining the status of existing claims against the Trust in May 2010 and served it on the Committee.

In June 2010, in connection with these remaining claims, the Committee filed a motion to compel the Trust to pay its counsel fees. The bankruptcy court denied the motion in part. The parties disputed whether the Committee still existed after the cut-off date for filing new claims. The court ruled that although the Committee still existed under the Trust Agreement, the Committee had no duties to perform under the Agreement after the cut-off date of August 12, 2009. The bankruptcy court explained that the Committee's duties were limited to "the formulation and administration of claims resolution procedures" as outlined in Section II of the APDCRP. Relying upon this assumption, the bankruptcy court

5

reasoned that the Committee's claims-processing duties ceased after August 12, 2009—the cut-off date for filing or processing any additional claims against the Trust. The district court affirmed the bankruptcy court, and the Committee appealed.

## III.

We examine a bankruptcy court's fact-finding for clear error and its legal conclusions de novo. In re Celotex Corp, 487 F.3d at 1327–28. We independently interpret the terms of the Trust Agreement and accompanying plan documents to determine the duties of the Committee, and whether the Committee may be compensated for expenses incurred in performing those duties. See id. at 1328.

To begin, we agree with the bankruptcy court that the Committee still exists under the Trust Agreement. Article 8.1 of the Trust Agreement provides that the Committee "shall exist . . . until the date the Trust pays the last Allowed [Property Damage] Claim and all disallowed [property damage] claims have been disallowed by final, non-appealable order." Article 1.24 of the Modified Joint Plan of Reorganization defines a property damage claim to include "any claim . . . relating to or arising by reason of, directly or indirectly, property damage." Thus, if there are any unresolved claims that arose out of asbestos property damage, even

6

indirectly, then the Committee continues to exist.  The outstanding claims—breach of express and implied contract, breach of trust, and breach of fiduciary duty—arose out of the Trust's alleged duty to pay property damage claims in accordance with the terms and procedures outlined in the Trust Agreement and accompanying plan documents.  Therefore, the Committee still exists.

We turn next to the duties of the Committee under the Trust Agreement. Section 8.1, which is entitled, "Formation; Duties," identifies two core duties of the Committee.  First, "[t]he Trustees must consult with the PD Advisory Committee on matters [concerning the APDCRP]."  Trust art. 8.1; see also id. at art. 3.2(e)(i)–(ii).  Second, "[t]he PD Advisory Committee . . . shall serve in a fiduciary capacity representing all holders of [property damage] claims."  Id. at art. 8.1.  Thus, under the clear terms of Article 8.1, in addition to its duties related to the APDCRP, the Committee has a duty to represent property damage claimants in a fiduciary capacity.

In reaching this conclusion, we have rejected the bankruptcy court's ruling and the Trust's argument that the Committee's duties were limited to the duties enumerated in the APDCRP.  The Committee correctly points out that its duties are broader than facilitating the processing of new property damage claims under the APDCRP.  For example, the Trustees are obligated to furnish the Committee

7

with annual financial reports and reports regarding the number and type of claims disposed of during the previous fiscal year.  See Trust arts. 3.2(c)(i)–(ii).  The Trust Agreement thus appears to contemplate some level of review and approval of these reports by the Committee.  See id. (referring to the Committee as a member of the "Approving Entities").  Indeed, the record supports that the Committee engaged in at least some review of these records in May 2010 when the Trustees served them with the annual report.  Therefore, we cannot conclude that August 12, 2009—the cut-off date for filing new claims against the Trust—is determinative of whether the Committee was performing its duties under the Trust Agreement.[1]

At this juncture, we need not delineate all the Committee's duties under the Trust Agreement.  It suffices for now to say that at least some duties under the Trust Agreement were broader than those identified in the APDCRP, and that the Committee performed those broader duties even after the cut-off date for filing

---

[1]  The Committee alleges, as it did in the bankruptcy court, that it seeks reimbursement in part for counsel fees that it incurred in reviewing the Trust's annual report filed in May 2010.  It also seeks reimbursement for performance of its basic fiduciary duties, which it defines as the duty of loyalty, a duty to act in the best interest of the parties, and a duty to disclose material facts.  While we accept that the review of annual reports is a compensable duty under the agreement, we reject that the fact of being a fiduciary, standing alone, is compensable under the agreement.  A fiduciary duty does not exist in a vacuum, but instead defines the relationship of the fiduciary to the principal as it acts pursuant to the terms of the agreement.  See Restatement 2d Trusts § 2(b).

8

new claims against the Trust.[2]

IV.

For these reasons, we VACATE the bankruptcy court's order, and

REVERSE and REMAND for further proceedings consistent with this opinion.

---

[2] The Committee concedes that its duties under the Plan Documents do not include the advocacy of individual property damage claims.  See APDCRP § II.